950 F.2d 797
 292 U.S.App.D.C. 388
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
PHILADELPHIA GAS WORKS, et. al, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 No. 90-1536.
 United States Court of Appeals, District of Columbia Circuit.
 Dec. 31, 1991.
 
 Before MIKVA, Chief Judge, and STEPHEN F. WILLIAMS and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM:
 
 FOR THE COURT:
 
 1
 This case was considered on the record on petition for review of an order of the Federal Energy Regulatory Commission and on the briefs and oral arguments of counsel. The issues have been accorded full consideration by the court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the petition for review is denied.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 Philadelphia Gas Works and other customers of the Transcontinental Gas Pipe Line Corporation (Transco) petition for review of a FERC order construing a settlement agreement between Transco and its customers. The settlement arose out of a dispute over Transco's "fuel retention rate" (the amount Transco charges its customers to cover the cost of gas used to compress and move a customer's gas through the pipeline). The Commission held that the language of the agreement precludes refunds for retention rates charged during the period covered by the settlement. The petitioners, a group of local distribution companies (LDCs), contend that the Commission's decision interpreting the settlement agreement is arbitrary and capricious. We hold that FERC reasonably interpreted the settlement agreement and, therefore, deny the petition.
 
 BACKGROUND
 
 5
 On September 30, 1983, Transco filed for a general rate increase pursuant to section 4(e) of the Natural Gas Act, 15 U.S.C. § 717c(e). The proposed rate increase, Docket No. RP83-137-000 (RP83-137), included an increase in Transco's average fuel retention rate from 4.8% to 6.1%. FERC accepted the filing but suspended the effective date of the increase until April 1, 1984. After April 1, 1984 the rates became effective but were subject to refund if the Commission determined, after a hearing, that the increase was unjustified.
 
 
 6
 On November 8, 1985, after hearings on the proposed rate increase, an Administrative Law Judge concluded that Transco did not offer sufficient support for the increase. The ALJ held that Transco based the 6.1% rate on an assumption that its pipeline operated at full capacity (1,000 billion cubic feet (bcf)); but the true operating figures showed that the pipeline was only operating at 975 bcf. At this capacity, the ALJ concluded, the appropriate fuel retention rate was 4.8%.
 
 
 7
 Several of the parties filed exceptions to the ALJ's decision but before the Commission issued its decision, a series of key events took place. On October 6, 1986, Transco filed for another general rate increase. That filing, Docket No. RP87-7-000 (RP87-7), also included a 6.1% fuel retention rate. Once again, FERC accepted the filing, suspended its effectiveness, this time until April 1, 1987, and set the matter for a hearing.
 
 
 8
 Before the hearing on the RP87-7 filing, however, Transco and the LDCs entered into a partial settlement agreement, dated November 24, 1987. The settlement agreement states, in relevant part, that it resolves all issues concerning the RP87-7 filing except those issues "reserved for hearing and decision" in Article VIII of the settlement. Article VIII(B) provides that:
 
 
 9
 "[t]he instant [agreement] resolves all remaining issues in this proceeding with the exception of the following issues which are reserved for further settlement or for hearing and decision:
 
 
 10
 .............................................................
 
 
 11
 ...................
 
 
 12
 * * *
 
 
 13
 (2) the rates and terms of service under Transco's transportation rate schedules.
 
 
 14
 Settlement Agreement at 12. Furthermore, the agreement states that "[w]ith regard to issue B(2) supra, ... any changes in Transco's rates as a result of the resolution of such issue ... shall be effective on a prospective only basis." Id.
 
 
 15
 Shortly after it approved the November 24, 1987 settlement, the Commission released its opinion affirming the ALJ's decision that Transco's fuel retention rate of 6.1% was unjustified. In its decision, FERC ordered Transco to refund the difference between the amount collected (6.1%) and the allowable 4.8% for the period beginning April 1, 1984 (the day that the rates proposed in RP83-137 went into effect) and ending April 1, 1987 (the day that the rates proposed in RP87-7 went into effect). The LDCs objected to the Commission's determination that the refunds extended only until April 1, 1987. They argued that Transco's RP87-7 filing was not a "rate change proposal" but, instead, was an attempt to continue the rates originally proposed in RP83-137 and thus the Commission's decision in RP83-137 applied to the RP87-7 filing as well.
 
 
 16
 On partial rehearing, however, the Commission rejected the LDCs' arguments and ultimately the LDCs petitioned for review to this court. (After another settlement the only disputed time period was between April 1, 1987 and March 31, 1989). In Transcontinental Gas Pipe Line Corp. v. FERC, 922 F.2d 865, 871-72 (D.C.Cir.1991), this court upheld FERC's decision. The court held that the Commission properly concluded that the RP87-7 filing was a rate change proposal. The court reasoned that although FERC had not yet ruled on the RP83-137 filing at the time of the RP87-7 filing, Transco knew that the Commission could reject the RP83-137 filing. By repeating the 6.1% fuel retention rate in its RP87-7 filing, Transco preserved the opportunity to readdress the 6.1% rate following the Commission's decision in the RP83-137 proceeding. In this way, the court concluded, the RP87-7 filing functioned as a rate change proposal rather than simply as a continuation of the RP83-137 filing. See id. at 872.
 
 
 17
 While the LDCs were seeking review of the Commission's decision regarding the RP83-137 filing, they were also pursuing relief from the agency's April 1, 1987 refund "cut off" through an interpretation of the November 24, 1987 settlement agreement. The LDCs filed a motion with the ALJ seeking summary disposition of the retention rate issue in the RP87-7 filing. They argued that the language of the settlement agreement evidenced the parties' intent that the Commission's decision concerning retention rates in RP83-137 applied to the retention rates in RP87-7 as well.
 
 
 18
 The ALJ denied the motion, holding that Transco had no refund liability for fuel retention rates between April 1, 1987 and March 31, 1989 because the settlement agreement did not reserve the issue for that period. See Partial Initial Decision Denying Motion for Partial Summary Disposition and Summarily Resolving Contested Issue, slip op. at 7-8 (November 24, 1989). The ALJ pointed out that the agreement provided only for a prospective adjustment of retention rates and therefore, "[w]hile no retroactive adjustment in the fuel retention rates may be made for the [April 1, 1987-March 31, 1989 period], the question of whether a prospective adjustment in fuel retention will be required ... is still an open question." Id.
 
 
 19
 The Commission affirmed the ALJ's reading of the November 24, 1987 settlement agreement. FERC agreed with the ALJ that the language of the settlement agreement provided only for prospective adjustments in the fuel retention rate. See Order Affirming and Adopting Partial Initial Decision, 50 FERC p 61,394 (1990). The Commission concluded that while the LDCs did reserve their right to a decision on fuel retention in Docket No. RP83-137, they did not reserve that issue for the period covering the RP87-7 docket (April 1, 1987 to March 31, 1989). FERC also rejected the LDCs' argument that subsequent orders by the Commission recognized the viability of the fuel retention issue in the RP87-7 docket because they never mentioned that relief was prospective only. The Commission held that it was irrelevant that certain Commission orders mentioned the fuel retention issue without stating that resolution would be prospective only because the November, 1987 settlement is the controlling document. Id.
 
 
 20
 After FERC denied the LDCs' petition for rehearing, see Order Denying Rehearing, 52 FERC p 61,308 (1990), the LDCs petitioned this court for review. The LDCs argue that the Commission's decision interpreting the settlement as resolving the fuel retention issue for the RP87-7 filing was arbitrary and capricious. The LDCs claim that the language of the settlement agreement as well as the parties' comments in support of the agreement show that the parties intended to reserve the fuel retention issue for the period between April 1, 1987 and March 31, 1989. Furthermore, the LDCs contend, the Commission itself, in other FERC orders discussing the settlement, has recognized the viability of the fuel retention issue for that period.
 
 
 21
 The Commission argues that the LDCs waived their challenges by failing to petition for rehearing after the Commission adopted Transco's reading of the settlement agreement. We do not consider the Commission's waiver argument but are convinced that its reading of the settlement agreement was reasonable.
 
 DISCUSSION
 A. FERC's Waiver Argument
 
 22
 FERC contends that the LDCs waived any challenge to the Commission's reading of the settlement when they failed to petition for rehearing after the agency adopted Transco's interpretation of the agreement when it was approved in 1988. The agency argues that section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b), bars an appeal of a Commission ruling when the parties seeking to challenge the ruling did not petition for rehearing "of the order containing the ruling the petitioner seeks to challenge." In support of its position, the Commission cites SAFE v. FERC, 791 F.2d 1403 (9th Cir.1986), where the Ninth Circuit held that a party cannot seek review of an order never brought before the Commission on rehearing by petitioning for review of another, related order.
 
 
 23
 In short, FERC's argument is that the "order containing the ruling" that the LDCs challenge here is the original approval of the settlement and not the order affirming the ALJ's interpretation of the agreement. FERC points out that Transco's comments in support of the settlement state that, while the issue of retention rates for the period covered by the RP83-137 filing remained an open issue, "the instant settlement is intended--and its language is clear--to settle all issues in this rate period [the period covered by the RP87-7 filing]...." Furthermore, FERC argues, in approving the settlement, the Commission adopted Transco's reading by stating that "[t]he Commission generally agrees with Transco's interpretation." The Commission asserts that because the LDCs never sought a rehearing of that decision, they cannot now challenge FERC's reading of the settlement that cuts off refunds after April 1, 1987.
 
 
 24
 We find the waiver issue a serious and difficult one. However, because the disposition on the merits is quite easy, and is against the party asserting that no waiver occurred, we turn directly to the merits. See Cross-Sound Ferry Servs., Inc. v. ICC, 934 F.2d 327, 333 (D.C.Cir.1991), and cases cited therein.
 
 
 25
 B. FERC's Interpretation of the Settlement Agreement
 
 
 26
 At the outset, we point out that this court must uphold the Commission's interpretation of the agreement if it reflects reasoned decisionmaking that has adequate support in the record. See Transcontinental Gas, 922 F.2d at 869. The settlement agreement dated November 24, 1987 states that it resolves all issues concerning the RP87-7 filing except those issues "reserved for hearing and decision" in Article VIII of the settlement. Article VIII(B) provides that:
 
 
 27
 "[t]he instant [agreement] resolves all remaining issues in this proceeding with the exception of the following issues which are reserved for further settlement or for hearing and decision:
 
 
 28
 .............................................................
 
 
 29
 ...................
 
 
 30
 * * *
 
 
 31
 (2) the rates and terms of service under Transco's transportation rate schedules.
 
 
 32
 Settlement Agreement, at 12 (emphasis added). The agreement further provides that "[w]ith regard to issue B(2) supra, ... any changes in Transco's rates as a result of the resolution of such issue ... shall be effective on a prospective only basis." Id. (emphasis added).
 
 
 33
 In its comments in support of the proposed settlement, Philadelphia Gas Works (one of the LDCs) stated that the agreement:
 
 
 34
 provides for amendment of the rates and tariffs to conform to Commission orders that may issue during the pendency of these rates. [This] reservation is central to PGW's support of the settlement and its agreement hereto has [sic] is conditioned on there being no change in this provision. Specifically, PGW has reserved its right on the question of Transco's fuel retention rates, a matter that has long been pending before the Commission in Docket No. RP83-137-000.
 
 
 35
 See, Comments of Philadelphia Gas Works in Support of Proposed Settlement, at 2.
 
 
 36
 Transco also offered an interpretation of Article VIII(B)(2) in its comments to the proposed settlement. Transco stated that "the instant settlement does not extinguish PGW's rights [in Docket No. RP83-137]--such as they may be--in the period covered by that docket.... [but] the instant settlement is intended--and its language is clear--to settle all issues in this rate period except those issues specifically identified as pending in other dockets or specifically reserved herein." See Reply Comments of Transcontinental Gas Pipe Line Corporation in Support of Revised Stipulation and Agreement, at 15. The Commission adopted Transco's reading of the settlement stating that "[t]he Commission generally agrees with Transco's interpretation." See Order Approving Contested Offer of Settlement as Modified, 44 FERC p 61,111, at 61,312.
 
 
 37
 The Commission held that the language of the agreement, as well as the parties' comments, supported the ALJ's decision that the settlement resolved all issues surrounding the RP87-7 filing and that any changes in the retention rates could be on a prospective basis only. See Order Affirming and Adopting Partial Initial Decision, 50 FERC p 61,394, at 62,227. FERC pointed out that the agreement did reserve for further hearings "transportation rates and terms" but that changes in any rates would be on a "prospective only basis." The Commission found that fuel retention rates fall within the category of "transportation rates" and thus no retroactive changes in fuel retention rates were available under the agreement. See id.
 
 
 38
 The LDCs argue that the parties never intended to include the disputed fuel retention rates in the general "transportation rates" for which only prospective relief was available. In fact, the LDCs point out, the issue whether fuel retention rates were "transportation rates" was a contested issue until the Commission resolved it in the RP83-137 decision, issued fifteen months after the settlement was approved. But PGW's comments never specifically mention the fuel retention rates in RP87-7. Furthermore, they never specifically state the LDCs' position that the retention rate issue in RP83-137 included the period of time covered by the RP87-7 filing.
 
 
 39
 Transco's comments are more clear. Transco stated that while the settlement did not extinguish PGW's rights under RP83-137 ("in the period covered by that docket"), the agreement "is intended--and its language is clear--to settle all issues in this rate period ...." See Reply Comments of Transcontinental Gas Pipe Line Corporation in Support of Revised Stipulation and Agreement, at 15. It appears from this statement that Transco intended only to preserve the fuel retention issue for the period covered by the RP83-137 filing.
 
 
 40
 In any case, the RP87-7 filing was a rate change proposal and started a new rate period beginning April 1, 1987. Since the Commission was, at the time, still free to reject Transco's previously proposed 6.1% fuel retention rate contained in the RP83-137 filing, see Transcontinental Gas, 922 F.2d at 872, that conclusion appears as no great surprise. Therefore, even if the settlement agreement reserved the question whether "transportation rates" included fuel retention rates, it only reserved that issue for the period covered by RP83-137.
 
 
 41
 We are convinced that the Commission was correct in reading the November, 1987 settlement agreement as precluding fuel retention rate refunds for the period between April 1, 1987 and March 31, 1989. Even if the agreement is somewhat unclear as to the parties' intent, the Commission's interpretation of the settlement is entitled to a high degree of deference. See Transcontinental Gas, 922 F.2d at 869. In the Transcontinental Gas case this court upheld the Commission's reading of a related settlement agreement even though "the import of the [settlement] toward the fuel retention rate [was] ambiguous." See Transcontinental Gas, 922 F.2d at 870. We concluded that when "faced with [a situation] in which the choice lies between dark grey and light grey," we would uphold the Commission's reasoned decision in favor of one over the other. See id. at 870 (internal quotations omitted). The November, 1987 settlement agreement presents the same choice between "dark grey and light grey" and, again, we defer to FERC's reasonable interpretation of the agreement.
 
 
 42
 The existence of other FERC orders mentioning the November, 1987 settlement without stating that changes in the retention rate would be prospective only does not cast sufficient doubt upon the Commission's interpretation of the settlement to change the result we reach above. Nor do the arguments advanced by FERC counsel in the Transcontinental Gas case. Accordingly, the petition is
 
 
 43
 Denied.